49 So.2d 600 (1950)
DI GIORGIO FRUIT CORP. et al.
v.
PITTMAN et al.
Supreme Court of Florida, Division B.
December 12, 1950.
*601 Maguire, Voorhis & Wells and Roe H. Wilkins all of Orlando, for appellants.
Wendell C. Heaton, Tallahassee, and Rodgers & Kirkland, Winter Garden, for appellees.
HOBSON, Justice.
This appeal is from an order entered in the court below on February 28, 1950, affirming an order of the full Commission, Florida Industrial Commission, entered November 14, 1949, which affirmed the order and findings of the Deputy Commissioner entered on September 12, 1949. The Deputy Commissioner found "that the nature of the Claimant's injury requires that he receive continuing medical treatment and medication in order that he might remain alive" and ordered that "the Employer, DiGiorgio Fruit Corporation, and the Insurance Carrier, Continental Casualty Company, do continue to pay in behalf of B.L. Pittman, the Claimant, such medical expense and medication as is necessary respecting the nature of the injury suffered by the said Claimant, and further that the said Employment Carrier pay to the said Claimant all receded sums expended by him in connection with his injury for medical assistance and medication from the 18th day of November, 1948, up until the day of this order."
The Appellants correctly suggest that this proceeding involves the construction of Section 440.13, Florida Statutes 1941, as amended by Chapter 21824, Laws of Florida 1943, F.S.A., which took effect the day of the accident.
The accident occurred on July 1, 1943. At the time of the accident, appellee, Barney L. Pittman, was employed by DiGiorgio Fruit Corporation and was engaged in pruning orange trees in Orange County, Florida. The accident occurred when Claimant was standing in a tree. His foot slipped on a limb and bruised the front of his left leg just below the knee. Claimant did not have any difficulty until a day or two after the accident, at which time his knee swelled; and about a week after the accident Claimant was forced to go to bed and later went to the hospital for treatment.
At the present time Claimant suffers from thrombophlebitis, which the doctors testified resulted from the knee injury. Since the date of the accident, Claimant has been forced to be hospitalized several times for treatment of the thrombophlebitis. The Insurance Carrier paid Claimant's expenses for an examination by Mayo Clinic in June, 1947. The Insurance Carrier paid Claimant the maximum allowance of $5,000.00 allowed him as compensation, and also paid medical compensation on his behalf up until about November 8, 1948, in the amount of something over $4,000.00. All the doctors who testified, both for Claimant and for the Insurance Carrier, agreed that it was impossible to effect a recovery. At times it becomes necessary for a doctor to treat Claimant, administering penicillin and other drugs to keep the thrombophlebitis under control. Also at times it has been necessary for Claimant to be hospitalized and given extensive treatment.
In 1948 after the Insurance Carrier allegedly became thoroughly convinced by medical reports and by the report of Mayo Clinic that Claimant's thrombophlebitis could not be cured, or that it was impossible to effect a recovery of Claimant from such condition, (apparently the Insurance *602 Carrier reached this conclusion at a time coincident with the date upon which the Carrier paid the full $5,000.00 compensation) and after the Insurance Carrier had spent a considerable amount of money in training Claimant for rehabilitation in the watch-making business, so as to keep him off his feet as much as possible, which trade Claimant now follows, the Insurance Carrier ceased medical payments on Claimant's behalf and refused to be responsible for any further medical payments, relying upon Section 440.13, Florida Statutes 1941, as amended by Chapter 21824, Laws of Florida 1943, F.S.A., as authority for its position.
It is contended by counsel for appellants that the Insurance Carrier should not be liable for additional medical, surgical, hospital etc. expenses since it appears that Claimant is suffering from thrombophlebitis, from which there can be no recovery, although periodic medication, treatment and hospitalization is still required. On the other hand, counsel for appellees contend that there was no error in the findings or order made by the Deputy Commissioner and that the full Commission and the Circuit Judge were correct in entering their orders of affirmance.
It is necessary for us to construe that portion of section 440.13, supra, which reads as follows: "(3) (a) All fees and other charges for such treatment or service shall be limited to such charges as prevail in the same community for similar treatment of injured persons of like standard of living, and shall be subject to regulations by the Commission, who shall adopt schedules of charges for such treatment or services, except that the total charge against the employer for such services and supplies shall not exceed the sum of One Thousand Dollars; provided, however, that if the nature of the injury or the process of recovery requires medical, surgical, hospital, and other attendance or remedial treatment, in addition to the One Thousand Dollars allowed, the Industrial Commission may on its own initiative or upon the application of any party in interest, order the employer or insurance carrier to furnish such additional treatment as may be necessary to effect a recovery." (Italics supplied.)
We have repeatedly held that "Workmen's Compensation laws should be construed liberally, and all doubts resolved in claimants' favor * * *." Fidelity & Casualty Co. of New York v. Moore, 143 Fla. 103, 196 So. 495; Southern Bell Telephone & Telegraph Co. v. Pinkerman, Fla., 47 So.2d 547. Apparently, we have not heretofore been called upon to answer the question presented in this case. In 58 Am.Jur. 804, Sec. 328, it is said: "Provisions requiring an employer to furnish to an injured employee such medical, surgical and hospital or nursing services as may be reasonably required to cure or relieve from the effects of the injury have in some cases been construed as imposing the obligation to continue such care and treatment as long as it is possible to alleviate the effects of the injury, and not merely until such time as it shall appear that a cure is hopeless. But it has been held that where further medical hospital and surgical services would not definitely improve the condition of an injured employee, and where such improvement would be conjectural, the employer's liability to furnish reasonable medical and hospital services and medicines, as and when needed, ceases."
None of the cases cited by counsel for appellant appears to us to be controlling; nor indeed are we persuaded by any or all of them to the view that the Carrier should not be responsible for further medical expenses in this case.
It will be noted that paragraph (3) (a) of Sec. 440.13, supra, contains the following language: "provided, however, that if the nature of the injury or the process of recovery requires medical, surgical, hospital, and other attendance or remedial treatment, in addition to the One Thousand Dollars allowed, the Industrial Commission may on its own initiative or upon the application of any party in interest, order the employer or insurance carrier to furnish such additional treatment as may be necessary to effect a recovery." (Italics supplied.)
*603 We are constrained to conclude that the nature of the injury in this case is such that it has required, and may require, additional treatment to "effect a recovery." It is necessary in construing the words "as may be necessary to effect a recovery" to consider them in connection with the language which precedes them "that if the nature of the injury" * * * "requires * * *". So we inquire, just what is the nature of this injury?
The medical testimony discloses the fact that the Claimant is suffering from "chronic thrombophlebitis" and that said condition is a result of an accident covered by the Carrier herein. The nature of this ailment is such that a flare-up occurs every two or three months, at which time the Claimant's legs become swollen, red and tense; his temperature rises and he experiences considerable pain. It appears from the testimony that these recurrent attacks are not uncommon in cases of thrombophlebitis. It is clear that the thrombophlebitis was a result of the accident and since the recurring attacks stem directly from the thrombophlebitis, we hold "the nature of the injury" requires that we construe the words "as may be necessary to effect a recovery" to mean a recovery from the attacks which are brought about as the result of thrombophlebitis. The obvious legislative intent in the enactment of paragraph (3) (a) of Sec. 440.13, supra, was that the Commission might require payment of medical expenses beyond an expenditure of $1,000.00 until such time as the Claimant recovers from the injury. It cannot be said that he has recovered from the injury so long as painful and potentially dangerous attacks directly attributable to, and consequent upon, the injury recur. Particularly is this true when the evidence discloses the fact that medication alleviates the pain and suffering  "the effects of the injury"  and without medical attention any one of such attacks might result in the death of the Claimant. It is clear that medical attention is required periodically in order to keep the condition attendant upon thrombophlebitis "under control."
Medicine is not an exact science. The most that doctors have said, or can say, in connection with thrombophlebitis being a condition from which complete recovery cannot be effected, is predicated entirely upon experience and there always remains the possibility of an unusual exception. Moreover, in this modern era of extensive scientific research, it is not possible to say with certainty today that any disease is incurable for no one knows but that tomorrow will herald a new miracle drug. At any rate, we humans find much comfort in the old adage, "While there is life, there is hope."
The order of affirmance entered by Honorable Frank A. Smith, Judge of the Circuit Court of the Ninth Judicial Circuit should be and is hereby affirmed.
ADAMS, C.J., and CHAPMAN and SEBRING, JJ., concur.